**FILED**

SEP – 5 2012

Clerk, U S District & Bankruptcy
Courts for the District of Columbia

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------- X

Edward D. Fagan, individually, and as a member       :       CASE NO.
of the "Interest Association of Wertheim Heirs",      :
     5708-01 Arbor Club Way                         :
     Boca Raton, FL  33433                          :
                  Plaintiff      :

    - versus -                                       :

Credit Suisse AG,                                     :       Case: 1:12-cv-01468
     1201 F. Street NW                              :       Assigned To : Walton, Reggie B.
     Washington, DC 20004                           :       Assign. Date : 9/5/2012
                                                    :       Description: Pro Se Gen. Civil

Credit Suisse Fides AG,                               :
     c/o Credit Suisse AG                           :
     1201 F. Street NW                              :       **COMPLAINT**
     Washington, DC 20004                           :       (with jury demand)
                                                    :

Credit Suisse Trust AG,                               :
     c/o Credit Suisse AG                           :
     1201 F. Street NW                              :
     Washington, DC 20004                           :
                Defendants      :

-------------------------------------------------------------------- X

*JURY ACTION!*

     Edward D. Fagan, Plaintiff pro se, declares / says, the following upon information and belief:

## INTRODUCTION

1)     This action is brought for damages caused by acts starting in the last days of World War

II, continuing into the 1970s, 1980s, 1990s and which continue to this day and through which a high

ranking Nazi was installed into a position of power and influence in Spain, originally by the Nazi

Regime and then confirmed and permitted to continue in his position by the post World War II

government of the Federal Republic of Germany.  This Nazi agents cover identity was that of an

Honorary "Consul General"; however one of his official duties was to continue the ideological and

political goals of The Nazi Party and *Operation Werwolf [1]*, *i.e.* to operate in post WW II Spain,

during the "Franco Regime".

---
[1]  *http://en.wikipedia.org/wiki/Werwolf* and *http://www.tau.ac.il/Anti-Semitism/asw98-9/spain.htm*

2)      The agent selected for this position was Captain Hans Hoffmann - former Gestapo Agent, Liaison Officer with the Blue Division and personal confidant of Adolf Hitler.  *See Exhibit 1 (Hitler – right, Hoffman – center).*

3)      Hoffman was empowered by both the post World War II German Government and the post Franco Regime Spanish Government.

4)      Hoffmann's official duties as an Operation Werwolf Agent were included helping to promote and facilitate the goals of and ideologies of the Nazi Party.

5)      Other official duties of Hoffmann as an agent of *Operation Werwolf* was to help Nazis flee Germany after World War II to "friendly" countries, mostly in South America, where they could live safely without fear of being discovered.

6)      Still other official duties of Hoffmann as an agent of *Operation Werwolf* was to help protect and conceal assets, including cash, bear stocks and artwork, that were looted by the Nazis and/or which were transferred into Spain and/or to help with the transfer of these looted assets from Spain to other countries.

7)      Once installed in Spain, with full authority of German & Spanish Governments, Hoffmann used his position to "mastermind" systematic transfers, looting and concealment of assets that Nazis originally stole from Holocaust victims or Jewish families already in Spain, assets that were to be transferred to Spain or that were still in the hands of persons from whom Hoffmann and his agents targeted for the thefts.

8)      True to his training, Hoffmann proceeded to use a network of (i) agents, (ii) lawyers [2], (iii) art dealers, auction houses and trustees [3], and (iv) banks and bankers located in Spain,

---

[2]      The lawyers Hoffmann used included Luis Marimón Garnier ("Marimón"), General Counsel of Deutsche Bank Spain and General Secretary in charge of Deutsche Bank Spain legal affairs and his firm Marimón Abogados.  He was also the General Secretary of Hispano Olivetti SA and is still General Secretary of Olivetti España SA, the Former Hispaña Olivetti Office SA.

Switzerland and Germany [4] to plunder and conceal the assets from one of the greatest Jewish family dynasties, The Wertheim Family, the majority of whom were killed in the Holocaust and the sole remaining heir who survived the Holocaust, and escaped to Spain, became a victim to this scheme.

9)     The looted assets are believed to be in excess of one billion dollars and included (i) bank accounts, (ii) safe deposit boxes, (iii) precious gems and metals, (iv) real estate holdings [5], (v) bearer bonds, (vi) corporate assets [6], (vi) collections of artwork [7], antique clocks, Aubusson tapestries, Madonnas, furniture, antique tables and rugs, (vii) Judaica and (viii) other valuable assets.

10)     What Hitler, Himmler, Göbbels, Göring and Eichmann did not finish in the systematic looting of the wealth of Europe's great Jewish dynasties, such as the Rothschilds, Warburgs, Deutschs, Hertzogs and Hatvanys, Former Gestapo Agent / then Consul General Hoffmann with the aide of willing, reckless or greedy Swiss Banks and others accomplished against The Wertheim Family and its fortune and holdings in Spain, Switzerland and throughout Europe and The USA.

11)     The acts were taken not just out of opportunity.  They were taken as part of a perverse and illegal duty to complete the goals of *Operation Werwolf* and were motivated by greed, hatred

---

[3]     The art dealers included Mr. Leutmeier and Urban & Perigal in Munich, Germany.  The auction houses included Sotheby's and Christie's.  The trustees included Mrs. Muller, Mr. Lang and Mr. Schiavone of Interwiko AG in Switzerland, Mr. Odi Graentz of Intertrade Development and Finance Limited of Knightsbridge, London, Marimón of Defendant Banks in Spain, Germany & Switzerland.

[4]     The banks used by Hoffmann who had special relationships with officers, directors and representatives Marimón as General Counsel of Deutsche Bank Spain and General Secretary in charge of legal affairs at Deutsche Bank Spain and Messrs. Diehr and Espinoza of Deutsche Bank Geneva.

[5]     The real estate holdings were in Spain and The United States.

[6]     The corporate assets were those that The Wertheim Family was able to build in Spain in the early 1900s and other assets The Wertheim Family transferred to Spain to protect them from the Nazis, including Rapida SA, the former La Casa Wertheim and other interests Hispano Olivetti SA and Comercial Mechano Grafico SA.

[7]     Some of the artwork that is subject of this claim are masterpieces, such as Piedra, Tintoretto, Rubens, Goya, Matisse, Tomasso and others, that belonged to The Wertheim Family and which were or are still in the Museo del Prado in Madrid, Museo Nacional d'Art de Catalunya in Barcelona and other museums.   These assets may also include a masterpiece from The Wertheim Family collection – *"The Triumph of The Eucharist"* painting and tapestry by Peter Paul Rubens – which is currently one of the main pieces and cornerstones of The John and Mable Ringling Museum of Art in Sarasota, Florida.

and loathing for Jews and the wealth and charity that were personified by The Wertheim Family. [8]

12)     As a direct and proximate result of this conspiracy and fraud, heirs and successors to the interests of The Wertheim Family fortune, including Jewish educational, charitable and philanthropic organizations, have been deprived of support promised to them by the last heir of The Wertheim Family – Dr. Ambrosius Wolfgang Bäuml. [9]

## PARTIES

13)     Edward D. Fagan ("Plaintiff" or "Fagan" or "Plaintiff Fagan") is an individual residing at 5708-01 Arbor Club Way, Boca Raton, FL  33433.  Plaintiff Fagan is an owner of certain rights to the estate of The Wertheim Family.   Plaintiff Fagan is also a "member" of the "Interest Association of Wertheim Heirs". [10]

14)     Credit Suisse AG ("Credit Suisse") is a Swiss Bank headquartered in Zurich Switzerland but which maintains offices and does business at 1201 F. Street NW, Washington DC 20004 and offers banking services for private wealth management, private & business clients and corporate clients and does business under one or more of its subsidiaries names in this judicial district.

15)     Credit Suisse Fides AG was part of Credit Suisse AG, headquartered in Zurich Switzerland, which maintains offices and does business at 1201 F. Street NW, Washington DC 20004 and offers banking services for private wealth management, private & business clients and corporate clients and does business under one or more of its subsidiaries in this judicial district.

---

[8]      Hoffmann's hatred and contempt for Dr. Bäuml and The Wertheim Family and for the charity they stood for was concealed during Dr. Bäuml's life and was only expressed after Dr. Bäuml was dying and later dead and after the money and assets had been taken.

[9]      Plaintiff Fagan is one of several holders of rights to The Wertheim Family assets.  Plaintiff Fagan is part of and cooperates with other holders of rights to The Wertheim Family assets, and refer to themselves as the *"Interest Association of Wertheim Heirs"*, all of whom acquired their rights from the estate of Dr. Bäuml and all of whom share a common purpose and goal to locate, recover and distribute The Wertheim Family fortune in accordance with the families historical commitments and the wishes of Dr. Bäuml that their money benefit educational, cultural and charitable institutions, particularly Jewish schools and creating a meaningful life and environment for the elderly.

[10]     The "Interest Association of Wertheim Heirs "is a fictitious (or doing business as) name registered in Florida and a trademark application in pending.

16)     Credit Suisse Trust AG was part of Credit Suisse AG, headquartered in Zurich Switzerland, which maintains offices and does business at 1201 F. Street NW, Washington DC 20004 and offers banking services for private wealth management, private & business clients and corporate clients and does business under one or more of its subsidiaries in this judicial district.

17)     Defendants Credit Suisse AG, Credit Suisse Fides AG, Credit Suisse Trust AG are collectively referred to through this complaint as "Defendant Banks" or "Credit Suisse".

18)     Credit Suisse had a special relationship with a director, officer and representative of Deutsche Bank, specifically Luis Marimón Garnier ("Marimón"), who was General Counsel of Deutsche Bank Spain and General Secretary in charge of legal affairs at Deutsche Bank Spain and who was a known trustee on a trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG and which were transferred improperly from that / those accounts to account number 132012 INT at Deutsche Bank (Suisse) SA.

## JURISDICTION & VENUE

19)     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (action against a foreign nation); and 28 U.S.C. § 1332 (diversity jurisdiction).

20)     Jurisdiction and venue is proper in this judicial district as Credit Suisse conduct business in this judicial district.

## STATEMENT OF FACTS

### Installation of Gestapo & Operation Werwolf Agent – Hoffmann in Spain

21)     From 1940 to 1944, Gestapo Agent and personal confidant of Adolf Hitler – Captain Hans Hoffman served as personal translator for Hitler and other visiting officials in Spain of the Nazi Regime during revered talks between Hitler, Franco and Franco's Generals. *See Exhibit 1 (Hitler, right – Hoffmann, center – and Franco's Aide, left).*

22)   As part of Operation Werwolf, in or about March/April 1944 Himmler and Göbbels dispatched Agent Hoffmann to Spain where he was to assist the Reich and successors to the Third Reich. *See FN # 1 above.*

23)   Hoffman's job was to assist in the relocation, collection, marshaling and concealment of looted assets so that they could be available to promote the post war individual and collective goals and ideologies of the Nazi party.

24)   After the fall of the Nazi Regime, Hoffmann was formally installed as Honorary Consul General of The Federal Republic of Germany in Malaga.

25)   The Kingdom of Spain officially welcomed Hoffmann and extended to him the courtesies, power, privileges and status as an official of Defendant Germany and a protected him and his activities in Spain.

26)   With the knowledge of Germany and Spain, Hoffmann continued to execute the goals of *Operation Werwolf.*

27)   Using his official position, Hoffmann enticed Dr. Bäuml to deposit critical business documents with him and to give Hoffmann authorizations to conduct certain business affairs for him by asking Dr. Bäuml for a personal power of attorney for such matters.

28)   Although Hoffmann developed acquaintances and "friendships" with certain Jewish families, such as Wertheim, he was a true Nazi, who used his position to also assist former SS and Gestapo officers, hide, establish new identities and then re-settle them in various South American countries, all of which was part of his duties in *Operation Werwolf.   See Spiegel Nr. 36 / 1963 "Gast bei Juanito" and. Spiegel Nr. 9  / 1980 "Dann Kommt Alles ins Rollen".*

29)   All the while, Hoffmann was not a wealthy man, did not have significant assets and he lived within "normal" economic conditions.

30)    Yet, a short time after the death of Dr. Bäuml on 2 August 1990, Hoffmann suddenly came to be in possession of enough money to create a foundation in Munich for his family and heirs.

31)    By the time Hoffmann died in 1996, within a few years after the death of Dr. Bäuml, his family had somehow amassed a personal wealth, through which his daughter, son [11] and second wife were set for life. [12]   Hoffman's son was the owner of a Swiss company, the UFM AG, a Lichtenstein foundation and other corporations.

32)    In 2010 and 2011, Hoffmann's son told the heirs representatives that his family fortune came from real estate transactions via Mr. Voegele of Switzerland, who made business in Spain, especially near Malaga in Marbella.

### The Wertheim Family from Frankfurt am Main – German Jewish Dynasty

33)    The Wertheim Family from Frankfurt am Main (hereafter referred to as "The Wertheim Family") was one of the greatest Jewish families in Germany's history and perhaps even in all of Europe and European history.  The Family Wertheim had strong connections to Switzerland, Lichtenstein, Australia, Austria, Great Britain and The USA.

34)    Dr. Ambrosius Wolfgang Bäuml was born 11th July 1921 in Herne Germany and who was the last heir of the Jewish dynasty Wertheim.

35)    The Wertheim Family had a long and proud relationship with Germany and conducted their international business from Europe.

---

[11]     Hoffman's son, Juan German Hoffmann, was part of the largest real estate scandal in the history of Spain – the case of "Malaya" – and in it Hoffmann's son was the "launderer" of looted funds.  This corruption and money laundering scandal has led to secret accounts in Switzerland and Liechtenstein.  In a police interview Hoffmann's son was asked where he had his large fortune and he is believed to have replied that he got this money from his father, who got it from "German who has lived here on the coast, get transferred to a foundation".  This reference is to Dr. Bäuml.

[12]     In Court records from the Malaya case, one accused provided evidence that Hoffmann's son gave him a three million Euro via Swiss company, UFM Holding AG, and its company Fink 2010 AG.

36)     Dr. Bäuml was the great nephew of Joseph Wertheim, a close friend of Reich Chancellor von Bismarck. Dr. Bäuml was the nephew of Karl Wertheim aka Carlos Vallin Ballin and Maria Wertheim, nee Wischanowska Gawronska, aka Maria Vallin Ballin.

37)     The Wertheim Family were to The German Jewish Community and the German Aristocracy, what The Rothschild & Warburg Families was to France and what The Herzog & Hatvany Families were to Hungary.

38)     The Werthheim Family was one of the most influential families in German Industrial History and very socially attuned.

39)     The Wertheim Family is still today well known throughout Germany and all over Europe and the USA for their social engagements.

40)     As was customary amongst the Jewish families in Europe both before and after World War II, The Wertheim Family wealth was divided throughout banks, safe deposit boxes, trustee accounts and foundations including ones in Germany, Spain, Switzerland, Lichtenstein, England and the United States.

41)     The Wertheim Family accumulation of wealth began in or around 1873, when patriarch Josef Wertheim founded a branch in Spain of his Wertheim Sewing Machine Company - Nähmschinenmanufaktur - and built up an independent production.

42)     The Wertheim Family had ten children.  Of the ten children, six were killed or perished during World War II during the Nazi Regime.   Two girls escaped to Australia, one girl to the United States and one son escaped to Spain.

43)     It was the fifth child of The Wertheim Family, Karl (a/k/a Charles or Carlos) Wertheim, who emigrated to Spain and stayed there during World War II.

44)     In Spain, Karl Wertheim took over the Spanish Branch of The Wertheim Family Sewing Machine Company, which in Spain went by the name "La Casa Wertheim".

8

45)     To obliterate all traces and connections he had to Germany, Karl Wertheim changed his name to Carlos Vallin Ballin, which incorporated the maiden name of his mother, which was a respected name and family in Spain and founding family of today's Hapag Lloyd Logistic Group.

46)     In 1920, Karl founded the Wertheim Rapida SA (also known as SA Rapida), which continued the activities of La Casa Wertheim on the sewing machine industry.

47)     Gradually, with the establishment of Rapida SA the Frankfurt-machine production was gradually reduced, and the assets were incorporated in the Rapida SA.

48)     Rapida SA became Spain's largest sewing machine manufacturer and one of Catalonia's most important export companies.  Rapida SA continued the business of the Wertheim's German sewing machine manufacturer but it did so from Spain.

49)     When the Nazis seized power in 1933, the remaining and able members of The Wertheim Family shifted The Wertheim Family assets to Switzerland and Swiss Banks, who promised identity protection and protection from seizure by the Nazis in the form of numbered accounts, trustee accounts under different names and safe deposit boxes.

50)     The Wertheim Family assets, including real estate holdings, bear bonds, stocks, corporate assets, collections and all valuables were brought to Switzerland and deposited into various banks.

51)     The Wertheim Family assets that were primarily deposited into Schweizerische Kreditanstalt (predecessor to Credit Suisse), Berner Kantonal Bank and Deutsche Bank.

52)     These assets were established in a carefully constructed web of guardianship, corporate, estate and trustee accounts, real estate holdings, foundations and safe deposit boxes.

53)     With the takeover of the Spanish Government by Generalisimo Francisco Franco in 1939, the connections between Hoffmann, Franco (Spain) and Nazis started to solidify. *See Exhibit 1 – Photograph of Franco's Aide, Hoffmann and Hitler.* [13]

54)     Under Franco's Spain, Karl was required to report the Wertheim Family assets to the Comite de Moneda Extranjera, *"The Committee for Foreign Monies"* and at that time he reported his foreign assets in Switzerland.

55)     Karl Wertheim married Mary Wertheim, born Wischanowska Gawrońska.

56)     Due to his personal illness, in 1936 Karl Wertheim transferred greater responsibility for the management of The Wertheim Family assets to his wife Maria.

57)     In 1939, Karl transferred the majority of its bearer shares in Rapida SA to wife Maria.

58)     Karl died on 24 August 1945 and Maria then became the sole and rightful heir and manager of The Wertheim Family fortune.

59)     Karl and Maria were unable to have children.  However, Maria insisted that The Wertheim Family name and tradition must continue.  So, she urged her husband Karl to take her sister Victoria who could give the Wertheim Family an heir.   The child born of this union was Ambrosius Wolfgang Bäuml ("Bäuml"), who Karl and Maria decided would be the heir of The Wertheim Family Legacy and assets.

60)     Prior to her death, Maria instructed young Bäuml in The Wertheim Family financial affairs.  She took him on countless trips to Switzerland and Liechtenstein and over time Dr. Bäuml became estute in the management of the property and financial matters of the Wertheim family which by this time was primarily located, deposited in and entrusted to Credit Suisse AG.

61)     During his life time, Bäuml was instilled with a strong commitment to his families with German and Jewish heritage.  He studied economics in Berlin and during this time, he developed a

---

[13]     Hoffmann's relationship with Hitler and Spain began as official translator for Hitler in negotiations with Franco, continued as other high-ranking Nazis during World War II negotiated various pacts with Franco's Spain and continued after 1945 with the implementation of *Operation Werwolf.*

relationship with the former CEO of Deutsche Bank AG, Dr. Hermann Josef Abs, head of Deutsche Bank before and after WW II and was one of the most powerful financial managers in Germany.

62) Throughout his life, The Wertheim Family heir Dr. Bäuml lived a modest life, and he never disclosed the incredible wealth and assets, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

63) Prior to his death - Dr. Bäuml – continued the commitments of The Wertheim Family, making generous contributions to a variety of philanthropic, arts, educational and jewish charities and institutions.

64) Perhaps the greatest mistake that Dr. Bäuml made was to allow himself to be drawn in by Hoffmann and his agents including lawyers Marimón and his firm Marimón Abogados; art dealers including Mr. Leutmeier and Urban & Perigal; auction houses included Sotheby's and Christie's; trustees including Muller, Lange and Schiavone; and others in Germany, Spain and Switzerland, who during the period from the 1980s to the early 1990s without the knowledge of Dr. Bäuml, transferred, syphoned off, misappropriated, looted and concealed the majority of the accumulated wealth of The Wertheim Family.

65) Lawyer Marimón was, on the one hand an officer / director at Deutsche Bank and on the other hand served as trustee of certain assets and accounts of Dr. Bäuml at Credit Suisse.   As partners and in furtherance of the plan to transfer, conceal and later use assets in trust, Marimón was in a unique position to first transfer the assets from Credit Suisse to one of the Deutsche Bank branches in Switzerland over which he could exercise greater control and authority and from which some of the assets were transferred for the benefit of Hoffman, Marimón and others and other assets still remain unaccounted or disappeared entirely.   The failure to exercise reasonable caution and diligence by Credit Suisse through it would have recognized a potential or inherent conflict of

interest as well as the breach of the trust relationship, when the monies were transferred from Credit Suisse to Deutsche Bank was a wrongful act of Marimón and a failure of Credit Suisse to properly control trustee accounts in its bank or make proper inquiry into the source and beneficial ownership of transferred funds.

66)     On his deathbed, Dr. Bäuml still believed The Wertheim Family fortune was safe at Credit Suisse and had no knowledge that assets had been transferred from Credit Suisse to Credit Suisse from which they disappeared or was misappropriated by Hoffmann and his co-conspirators.

67)     After Dr. Bäuml's died, Rudolf and Giselheide Sutor were about to become appointed and recognized by the German Courts as the official heir to the estate of Dr. Bäuml.   This process would normally take a matter of a month or so and is routine.   Had this happened, Hoffmann and Credit Suisse past actions might have been discovered in time to take appropriate steps to secure and recover transferred assets.   And, had this happened Hoffmann's plans to further transfer, liquidate and conceal Dr. Bäuml's assets would have been stopped.   So, Hoffmann used his position as Consul General of Germany to threaten the Sutors and to delay their ability to be expeditiously appointed and recognized as the heirs of the estate of Dr. Bäuml.

68)     In this way, during Dr. Bäuml's and after his death, Credit Suisse allowed Hoffmann and his agents to:

a)   Invade a trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG and improperly transfer the funds from that / those accounts to account number 132012 INT at Deutsche Bank (Suisse) SA.

b)   Seize control of the 30,000 m$^2$ farm in which much of the artwork, antiques, tapestries and other valuables were stored and prevented the lawful heirs from gaining access to secure the

artwork and assets which he sold the farm [14] and shortly thereafter (i) the artwork, antiques, tapestries and other valuables disappeared;

c)  Transfer to himself nine million Deutsche Marks in cash with which he purchased the buildings of the Hanns Seidel Stiftung and gave them to the Deutsche Schule in Ojen – Marbella, now called German School Juan Hoffman [15];

d)  Together with the trustees and art dealers, Hoffmann orchestrated the transfers and liquidation of assets from the bank accounts, foundations and safe deposit boxes in Switzerland and Lichtenstein; and

e)  Liquidate the assets of Hispano Olivetti Office SA, which included Hispano SA Olivetti Office and The Wertheim Castle, known as "Teya", was liquidated and disappeared into the hands of Hoffman and his agents, including Marimón. [16]

69)    All of this was done without the knowledge consent or approval of Dr. Bäuml or his true heirs, Mr. Rudolf Sutor and his wife Mrs. Giselheide Eichhammer Sutor.

70)    All of this was avoidable had Credit Suisse properly protected and exercise diligence over the trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG while they were at Credit Suisse and so they could not have been transferred to account number 132012 INT at Deutsche Bank (Suisse) SA.

## Search for the Missing Wertheim Family Assets & Equitable Tolling

71)    During the period from 1990s to the present the heirs to the Wertheim Family attempted to locate and trace the assets.

---

[14]    For the sale of the farm, Hoffmann used a convicted German criminal from Germany named Peter Schianski.

[15]    The information on the sudden appearance of 9 million Deutsche Marks in the hands of Hoffmann to buy the building for the German School came from Dr. Benkendorf, legal adviser of the German School in Marbella.

[16]    Much of the artwork, antiques and other valuables that were collected by The Wertheim Family were housed in Castle Wertheim at Tera.

72)     In this regard, they approached and demanded information from Credit Suisse, Credit Suisse and their agents.

73)     From the 1990s to 2010, Credit Suisse, where The Wertheim Assets were originally located and deposited before Hoffmann and his agents, secretly transferred them to Deutsche Bank, denied any connection to The Wertheim Family assets, or Dr. Bäuml, or to any company in the name of Dr. Bäuml or to which he was the beneficial owner.

74)     From the 1990s to present, Credit Suisse concealed all records of the relationship and trustee accounts they opened pursuant to the plan and scheme orchestrated by Hoffmann.

75)     At the end of 2009, again in late spring 2010 and then again in the fall 2010, the prior heirs to The Wertheim Family assets and estate of Dr. Bäuml met with German business and tax consultants from whom they sought assistance in how to go about and who could help them gather documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets.

76)     In early 2011, an investigator and Jewish communal leaders were consulted to see what if any help they could provide as to how documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets, could be gathered so the heirs could try to understand if they had a claim and if so against whom and based upon what cause of action.

77)     In 2011, the heirs wrote to Credit Suisse informing it that they had discovered the reference to Credit Suisse in one of Dr. Bäuml's diaries and requested Credit Suisse's assistance in trying to locate documents and information about the disappearance of The Wertheim Family fortune and the transfers, location and disposition of assets.

78)     In October 2011, Credit Suisse agreed to a meeting with the heirs' investigator and consultant, and at the meeting, Credit Suisse denied having knowledge, documents or information

about the disappearance of The Wertheim Family fortune and transfers, location and disposition of assets of Dr. Bäuml. Credit Suisse's answer was given the next day and stated in effect:

> . . . We have done intensive research in our headquarters and in our affiliate in Switzerland and can tell you that we have no banking relations including bank accounts with numbered accounts and pseudonyms in the names of Dr. Ambrosius Wolfgang Bäuml, Maria Wischanowska Gawronska, aka Maria Vallin Ballin, and Don Carlos Vallin Ballin, former Karl Wertheim.  We had an numbered account with the code word 1250 Montreal – owner Maria de Vallin but it was liquidated years ago and due to Swiss Banking regulations we are sorry that we cannot tell you anything because according to article 962 OR we only have to keep the documents for 10 years.  According to the company accounts of Interwiko AG it is not enough to be the heir of the supervisory or managing members, only people who are marked in the commercial register are allowed to get information.  For your information, you should consider contacting The Swiss Bank Ombudsman . . .

79)    At this point, Plaintiff's predecessors had still not discovered evidence of the wrongdoing of Defendant Banks or Hoffmann, and did not know that the trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG which were transferred improperly from that / those accounts to account number 132012 INT at Deutsche Bank (Suisse) SA.

80)    As a result of the mis-information given by Credit Suisse, the investigator and consultant directed further inquiries to one of the agents for Hoffmann (who by now was deceased) and tried to arrange a meeting in November 2011 with Marimón.  However, Marimón refused the request for a meeting but his son could not hide and agreed to meet.  After the meeting, Marimón's son wrote and explained that he had consulted with his father and that they did not know of the death of Dr. Bäuml until years later in 2006 and that his father could not remember how much money there was because so much time had passed and that he doubted there was much money because if there had been so much money, it would have been something he might remember and in any event, he had no knowledge of what if anything happened to any money claimed to belong to Dr. Bäuml.  And, he does not know of his brother (Frederico Marimón Garnier) being involved in any foundation account

in Switzerland.  And any documents had long since been destroyed and that there were no electronically stored documents.  These statements were in fact false.

81)     In January 2012, for the first time, letters and phone calls were directed the Legal & Compliance Departments of Credit Suisse, by representatives and consultants working with the heirs, and informed Credit Suisse that there appeared to be evidence connecting it to the missing Wertheim Family fortune and requesting documents and information about The Wertheim Family assets, and the transfers from Credit Suisse to Deutsche Bank and the present status and accounts belonging to the estate of Dr. Bäuml.   In response, Credit Suisse provided no information and directed the heirs to Deutsche Bank Geneva.

82)     In January 2012, despite additional inquiries, Credit Suisse continued to refuse to provide information or documents related to the estate, assets or accounts of Dr. Bäuml.

83)     From June, July & August 2012, Credit Suisse, its Chief Executive Officers, Managers, Directors and Supervisory Board were requested to produce all bank records and documents related to the estate, assets and accounts of Dr. Bäuml and accounting and restitution of monies and assets.

84)     Credit Suisse continued to refuse to cooperate, refuse to provide the requested documents and in fact continued to lie about the existence of assets and account that were transferred from the trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG to account number 132012 INT at Deutsche Bank (Suisse) SA from / in the name of Dr. Bäuml or as to which Dr. Bäuml or his companies was / were the beneficial owners.

## Credit Suisse's Wrongdoings

85)     Credit Suisse had a special duty to Plaintiff's predecessors with regard to trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG that were transferred improperly from that / those accounts to account number 132012 INT at Deutsche Bank (Suisse) SA.

86)     Credit Suisse AG had a special duty to Dr. Bäuml and his companies to protect master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG for it was Credit Suisse that directed him to Credit Suisse Fides AG and/or Credit Suisse Trust AG to create the foundations and/or trust agreements pursuant to which the accounts were to be managed and controlled by Credit Suisse.  Credit Suisse failed in that duty.

87)     Credit Suisse failed to properly inquire into the potential conflict and improper activities related to the handling of the trustee and other accounts by officers, directors and representatives, of other banks including General Counsel and General Secretary in charge of legal affairs at Deutsche Bank Spain, Luis Marimón Garnier and directors/officers Pierre Diehr and Jaime Espinoza at Deutsche Bank Geneva.

88)     From 2006 to present, Credit Suisse concealed documents, interfered with depositors', account holders or successors' rights, and has threatened and intimidated with the rights of Plaintiff's predecessors (who are aged and not in good health).

89)     From 2006 to present, Credit Suisse acts were designed and intended to prevent Plaintiff's predecessors from taking steps to attempt to recover the assets from the accounts and assets of the estate of Dr. Bäuml and/or to which he was the beneficial owner held by Credit Suisse.

90)     Credit Suisse failed to comply with their own Rules of Corporate Government, related to accounting, internal accounting control and auditing matters related to violations involved with transfers / taking of trust and foundation accounts assets from accounts and possibly connected safe deposit boxes at Credit Suisse belonging to Dr. Bäuml, or his companies or over which he was beneficial owner and which accounts, monies and assets that were transferred from Credit Suisse to be transferred / deposited into account number 132012 INT at Deutsche Bank (Suisse) SA Geneva.

91)     Credit Suisse failed to comply with their own regulations regarding identity verifications, beneficial owners, foreign currency transfer reporting requirements, estate and tax compliance and

other matters that were involved in opening and transferring into accounts – including numbered, secret, nominee and/or trustee accounts and safe deposit boxes - with the huge sums of money, assets, bearer bonds, securities, foundation assets and the other assets that were part of The Wertheim Family Fortune and to which Dr. Bäuml was the sole and rightful heir and beneficial owner.

92)     Credit Suisse allowed these acts to be taken without the knowledge or consent of the lawful heirs of Dr. Bäuml.

93)     Credit Suisse failed to notify the lawful heirs of Dr. Bäuml of the transfers / taking of trust and foundation accounts assets from accounts and possibly connected safe deposit boxes at Credit Suisse belonging to Dr. Bäuml, or his companies or over which he was beneficial owner and which accounts, monies and assets Defendant Banks' directors and/or officers caused or helped to be transferred / deposited into account number 132012 INT at Deutsche Bank (Suisse) SA Geneva.

94)     Credit Suisse allowed other banking directors, officers and senior financial officials – who as trustees also had fiduciary duties over which Credit Suisse should have inquired and realized the actual or apparent conflicts of interest - to exercise absolute control over the accounts and assets of Dr. Bäuml or to which they knew or should have known belonged to him and his heirs.

95)     Credit Suisse allowed other bank Directors and Officers, to operate without regard to the apparent conflicts of interest, internal rules and regulations and in what also appears to have been an effort to not only unlawfully exercise control over "client or fiduciary or trust funds" but also evade compliance with applicable estate, corporate and persons tax liabilities.

96)     Credit Suisse assist Hoffmann and a trustee on accounts over which Credit Suisse should have exercised greater control, and as they implemented the goals of *Operation Werwolf* to steal the assets of Dr. Bäuml and The Wertheim Family Fortune.

97)     Credit Suisse allowed fiduciary funds to be taken or used and/or benefit others and purposes for which they were not intended as Hoffmann and others implemented the goals of *Operation Werwolf* to steal the assets of Dr. Bäuml and The Wertheim Family Fortune.

98)     From 1990s to the present, Credit Suisse failed to cooperate with the heirs, Plaintiff's predecessors, or to account for the transferred assets.

99)     From the 1990s to the present, Credit Suisse concealed their wrongful acts, destroyed documents and made material misrepresentations in response to inquiries from heirs to the estate and assets of Dr. Bäuml.

100)    From the 1990s to the present, Credit Suisse engaged in systematic and continuous efforts to conceal their wrongful acts so as to frustrate Plaintiff's predecessors' ability to locate and recover the assets of Dr. Bäuml, to get an accounting of or for the assets of Dr. Bäuml, that were transferred from trustee account at Credit Suisse, master account number 0251-746.794-0 and several sub-accounts at Credit Suisse AG to number 132012 INT at Deutsche Bank (Suisse) SA; or to gain access to bank records / documents with which to demand return of assets of Dr. Bäuml and where necessary (such as now) to make claims against those involved in wrongful taking, misappropriation, conversion and concealment of assets of Dr. Bäuml and The Wertheim Family Fortune.

## CAUSES OF ACTION

### First Claim for Relief -
### Damages Resulting from Destruction of Bank Records

101)    Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

102)    Credit Suisse had a contractual, legal and fiduciary duty to preserve the documents and records related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, as well as cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate

assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

103)   Defendants violated their aforesaid duties.

104)   During the period from 1990 to present, Credit Suisse now claim that it destroyed all records that could have related to The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

105)   Plaintiff has been damaged by Credit Suisse's destruction of records related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which damages are anticipated to be **in excess of one billion dollars**, subject to proof at trial.

### Second Claim for Relief -
### Conspiracy to Destroy Bank Records and Interfere with Depositors' & Account Holder Rights

106)   Plaintiff incorporates paragraphs 1 to 95 of the Complaint as if fully set forth herein.

107)   During the period from 1990 to the present, Credit Suisse conspired with others including Hoffmann's agents and Marimón to prevent Plaintiff's predecessors from gaining access to evidence and documents related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml as well as the assets in safe deposit boxes.

108)   During the period from 1990 to the present, Credit Suisse conspired with others including Hoffmann's agents and Marimón to evade their obligations under banking and governmental rules and regulations and agreements made for the benefit of depositors, heirs and successors, that required Credit Suisse to comply, cooperate and assist Plaintiff and his co-owners efforts to gain access the records, documents and other materials related to The

Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

109)    During the period from 1990 to present, Credit Suisse and agents of Hoffmann and Marimón conspired with one another to conceal destruction of records, documents and other materials related to The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, in an effort to prevent Plaintiff from discovering the additional causes of action and claims.

110)    Defendants' acts were unlawful and violated agreements made with and/or for the benefit of The Wertheim Family, Dr. Bäuml and their heirs and successors.

111)    Plaintiff and The Wertheim Family heirs, successors and representatives have been damaged by Credit Suisse destruction of records related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which damages are anticipated to be **in excess of one billion dollars**, subject to proof at trial.

### Third Claim for Relief - Bailment

112)    Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

113)    When Credit Suisse, their agents and Hoffmann took and accepted possession of the transfers/deposits of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and

other assets, they did so with express knowledge that The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks, bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets belonged to the Interest Association of Wertheim Heirs.

114)    Credit Suisse at no time had more than a custodial interest in The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, pursuant to applicable laws and post-war treaties, which required Credit Suisse to safeguard the property for benefit of its / their rightful owners.

115)    Credit Suisse, allowed agents and Hoffmann to come into possession of The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, constituted an express or implied-in-fact bailment contract for the benefit of members of The Interest Association of Wertheim Heirs.

116)    Under the bailment and fiduciary contract, Credit Suisse owed The Wertheim Family, Dr. Bäuml and their survivors, heirs, successors and representatives a duty of care to protect the property and to return it to them.  Credit Suisse at all times understood that The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, remained the property of Plaintiff and members of the Interest Association of Wertheim Heirs, who retained the right to demand its return.

117)   Credit Suisse received substantial financial benefits from their possession of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including the cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, far exceed any costs they may have expended in storing or maintaining the assets or accounts.

118)   Plaintiffs and other members of the Interest Association of Wertheim heirs presently own and have a right to possession of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

119)   Plaintiff and/or other members of the Interest Association of Wertheim Family heirs have demanded the return of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.  Credit Suisse breached its duties by rejecting the demands. Any further demand would be futile.

120)   Plaintiff individually and as a member of the Interest Association of Wertheim Heirs has been damaged by Credit Suisse's breach of its bailment obligations and refusal to return The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and is entitled to restitution, or payment of for his interests which is valued **in excess of one billion dollars** subject to proof at trial.

## Fourth Claim for Relief - Conversion

121) Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

122) By refusing to return to return or help recover The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, pursuant to the bailment relationship among the parties, Credit Suisse knowingly helped others converted The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

123) To the extent that Credit Suisse, Hoffmann's agents and Marimón, purported to convert or otherwise knowingly exercised ownership rights over The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, that were inconsistent with the terms of the bailment relationship, Credit Suisse unlawfully concealed this conversion from Plaintiff and members of Interest Association of Wertheim Heirs.

124) At no point did Plaintiff or other members of the Interest Association of Wertheim Heirs consent to Defendants' exercise of ownership rights over The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

125)    Plaintiff and other members of The Interest Association of Wertheim Heirs have been damaged by the conversion of their property and are entitled to restitution, or payment of their interest in The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which interest is valued to be **in excess of one billion dollars**, subject to proof at trial.

### Fifth Claim for Relief - Constructive Trust

126)    Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

127)    Credit Suisse wrongfully obtained or allowed others to obtain The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, through violations of international law, duress and deceit.

128)    Credit Suisse have continued to wrongfully retain The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, despite demand for its return.

129)    As a result, Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to the imposition of a constructive trust on The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, currently in possession of Defendants,

obligating its return and/or payment of compensation in an amount valued **in excess of  one billion dollars** subject to proof at trial.

130)    In addition, Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to an accounting of the assets, valuables and works of art subject to constructive trust.

### Sixth Claim for Relief - Accounting

131)    Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

132)    Defendants never accounted for The Wertheim Family Assets and accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which they have had in their possession for since at least 1991.

133)    As a result of the bailment relationship created among the parties, Credit Suisse had a fiduciary duty to return or help recover The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, to Plaintiff and members of The Interest Association of Wertheim Heirs upon demand.   Credit Suisse failed to fulfill that duty.

134)    Credit Suisse knows or should know the whereabouts of the property deposited that was and should still be within its possession, custody or control.

135)    Plaintiff, his predecessors and other members of The Interest Association of Wertheim Heirs, have no adequate remedy at law.

136)    Plaintiff and members of The Interest Association of Wertheim Heirs are entitled to an accounting of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold,

silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, that were and should still be within their possession, custody or control, and all monies which Credit Suisse earned or received there from.

**Seventh Claim for Relief - Declaratory Relief**

137)   Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

138)   An actual case or controversy has arisen between Plaintiff and Defendants concerning the right to ownership and possession of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets.

139)   Credit Suisse has wrongfully retained The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and have refused to provide restitution to Plaintiff or members of The Interest Association of Wertheim Heirs.

140)   Credit Suisse contends that it is not required to restitute The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or any portion or interest to Plaintiff or members of Interest Association of Wertheim Heirs or that they have no documents that would show any entitlement to such assets or the return thereof.

141)   Plaintiff and members of the Interest Association of Wertheim Heirs contend that Credit Suisse was not entitled, without the prior written authority from the heirs and beneficial

owners, to release title to any potion of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, because the relationship among Plaintiff and members of the Interest Association of Wertheim Heirs and Defendants was that of a bailment.

142)    Plaintiff and other members of the Interest Association of Wertheim Heirs are entitled to a declaratory judgment declaring him / them to be the true owners of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and directing Credit Suisse to return the assets that are now, or which may later come to be, in their possession, or to compensate them for lost assets, which interest is valued **in excess of one billion dollars** subject to proof at trial.

### Eighth Claim for Relief – Restitution Based on Unjust Enrichment

143)    Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth herein.

144)    As described above, Credit Suisse has been unjustly and unlawfully enriched at the expense of Plaintiff and members of the Interest Association of Wertheim Heirs.   Credit Suisse obtained The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, that it allowed others to obtain through violations of international law, duress and deceit, and have wrongfully withheld and refused to return or account for or help recover and restitute the assets to Plaintiff or other members of the Interest Association of Wertheim Heirs.

145)   Plaintiff has no adequate remedy at law.

146)   As a result, Plaintiff and other members of the Interest Association of Wertheim

Heirs is entitled to restitution of The Wertheim Family Assets and the accounts in the name of

Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica

collections and other assets, that came into their custody, possession or control or which may

yet be in Credit Suisse's possession or compensation for that which they improperly released

which is valued to be **in excess of one billion dollars** subject to proof at trial.

### Ninth Claim for Relief – Restitution Based on Equitable Disgorgement

147)   Plaintiff incorporates paragraphs 1 to 100 of the Complaint as if fully set forth

herein.

148)   As described above, Credit Suisse has been unjustly and unlawfully enriched at the

expense of Plaintiff and members of The Interest Association of Wertheim Heirs.  Credit Suisse

obtained The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including

cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver,

diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or

allowed others to obtain the accounts and assets through violations of international law, duress

and deceit, and have wrongfully withheld from and/or refused to return or help recover the

deposited assets, from Plaintiff and other members of The Interest Association of Wertheim Heirs.

149)   Plaintiff and other members of the Interest Association of Wertheim Heirs have no

adequate remedy at law.

150)   As a result, Plaintiff and other members of the Interest Association of Wertheim Heirs

are entitled to equitable disgorgement of The Wertheim Family Assets and the accounts in the

name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings,

corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, which may yet remain in Credit Suisse accounts or compensation for other monies that it released to others or other banks in an amount valued **in excess of one billion dollars**, subject to proof at trial.

151)    In June, July and August 2012, demand letters were delivered to Credit Suisse informing them of the claim sounding in destruction of bank records and reminding them of their contractual and fiduciary obligations to cooperate with regard to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and specifically requested and demanded production and preservation of records.

152)    In response to the 2012 Demands, Credit Suisse refused to meet and refused to cooperate with requests of The Interest Association of Wertheim Heirs, acting on behalf of Plaintiff and others. Plaintiff and his representatives explicitly sought to deal with these issues so that the issues could be resolved honorably, expeditiously and without the need to resort to litigation and the accompanying potential public attention to issues involving Nazis, German and Swiss Banks which were involved with the transfers, conversion, misappropriation and/or outright theft of Jewish assets and the attendant concealment and destruction of documents and bank records.

153)    A formal Demand for the return and restitution of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, has been delivered to and refused by Defendants. No further demand is necessary and any further demand would be futile.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

A.      **On the First Claim for Relief:** for damages as a result of destruction of records thereby impairing Plaintiff's ability to make civil claims and for compensation **in an amount in excess of one billion dollars** for The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, subject to proof at trial;

B.      **On the Second Claim for Relief:** for damages resulting from conspiracy to destroy bank records and interference with depositors' and account holders' rights, related to The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, impairing Plaintiff's ability to make civil claims and for compensation **in an amount in excess of one billion dollars** for The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, subject to proof at trial;

C.      **On the Third & Fourth Claim for Relief:** for a bailment order directing Defendants to return to Plaintiff or the Interest Association of Wertheim Heirs, The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation for conversion in an amount **in excess of one billion dollars**, subject to proof at trial;

D.      **On the Fifth Claim for Relief:** for an order declaring that Defendants hold as constructive trustees, for and on behalf of Plaintiff and members of The Interest Association of Wertheim Heirs of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation in an amount **in excess of one billion dollars**, subject to proof at trial;

31

**E.**   **On the Sixth Claim for Relief:** for an order directing Defendants to account to Plaintiff and members of The Interest Association of Wertheim Heirs, for The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, or pay compensation in an amount **in excess of one billion dollars**, subject to proof at trial;

**F.**   **On the Seventh Claim for Relief:** for an order declaring that Plaintiff and the other members of The Interest Association of Wertheim Heirs are the owners of the contents of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and to return same or pay compensation in an amount **in excess of one billion dollars**, subject to proof at trial;

**G.**   **On the Eighth Claim for Relief:** for an order unjust enrichment and directing Defendants to pay Plaintiff and members of The Interest Association of Wertheim Heirs are the owners of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and to pay restitution in an amount **in excess of one billion dollars**, subject to proof at trial;

**H.**   **On the Ninth Claim for Relief:** for an order for restitution based on unjust enrichment and directing Defendants to pay Plaintiff and members of The Interest Association of Wertheim Heirs are the owners of The Wertheim Family Assets and the accounts in the name of Dr. Bäuml, including cash in bank accounts, stocks and bearer bonds, real estate holdings, corporate assets, gold, silver, diamonds, art, antiques, tapestries, clocks, furniture & Judaica collections and other assets, and to pay restitution in an amount **in excess of one billion dollars**, subject to proof at trial;

**I.**   **For an order awarding exemplary, special and/or punitive damages** for Defendants wrongful conduct;

**J.**   **For pre- and post-judgment interest** on any award; and

**K.**     **Awarding** Plaintiff and members of The Interest Association of Wertheim Heirs such other and further relief, as this Court deems just and proper.

Dated: September 5, 2012          Edward D. Fagan (electronic signature)
      Boca Raton, FL         Edward D. Fagan, individually and as a member of
                                   Interest Association of Wertheim Heirs
                                   5708-01 Arbor Club Way, Boca Raton, FL  33433
                                   Tel/Fax # (561) 372-9296 / (561) 948-2707
                                   Email: faganinternational@gmail.com
                                   Plaintiff Pro Se